```
                  UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


UCHE IKWUT-UKWA,                    :   CIVIL NO. 3:07-CV-01256
                                    :
        Plaintiff                   :
                                    :   (Magistrate Judge Smyser)
    v.                              :
                                    :
ALLEN E. BIEHLER, SECRETARY,        :
DEPARTMENT OF TRANSPORTATION        :
and COMMONWEALTH OF PENNSYLVANIA,   :
DEPARTMENT OF TRANSPORTATION,       :
                                    :
        Defendants                  :
```

**MEMORANDUM AND ORDER**

I. Background and Procedural History.

The plaintiff commenced this action by filing a complaint on July 11, 2007.

The defendants named in the complaint are the Commonwealth of Pennsylvania, Department of Transportation (PennDOT) and Allen E. Biehler, who is the Secretary of PennDOT.

The plaintiff, who was born in Nigeria, claims that he was subjected to wrongful discrimination while he was employed at PennDOT as a civil engineer. He alleges that he was discriminated against because of his race, his color and his national origin. He alleges that he was denied a promotion as a result of wrongful discrimination. He also alleges that after he filed a complaint

with the Equal Employment Opportunity Commission and the Pennsylvania Human Relations Commission the defendants retaliated and discriminated against him by denying other promotions, by denying tuition reimbursement, by denying leave time to him for employment-related education and by denying him compensation for duties he performed above and beyond those assigned to his position and pay grade.  The plaintiff also claims that he was subjected to a hostile work environment because of his race, color and national origin and that, on April 7, 2006, he was constructively discharged from his employment with PennDOT.

The plaintiff brings his claims pursuant to Title VII, 42 U.S.C. § 2000e et seq., and pursuant to 42 U.S.C. § 1981.

On August 31, 2007, the defendants filed an answer to the complaint.

The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c).  The case is scheduled for trial beginning on February 17, 2009.

Currently pending is the defendants' motion for partial summary judgment.

II. Summary Judgment Standard.

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'-- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.  Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must "set out specific facts showing a genuine issue for trial."  Fed.R.Civ.P. 56(e)(2).

A material factual dispute is a dispute as to a factual issue that will affect the outcome of the trial under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

Summary judgment is not appropriate when there is a genuine dispute about a material fact. *Id.* at 248.  An issue of fact is "'genuine' only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d Cir. 1988).  "Where the record

3

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson, supra,* 477 U.S. at 249-50.  In determining whether a genuine issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party.  *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).

At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial.  *Anderson, supra,* 477 U.S. at 249.  The proper inquiry of the court in connection with a motion for summary judgement "is the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322.  "Under such

4

circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

III. Discussion.

Defendant Biehler contends that since individual employees may not be held liable for discrimination under Title VII, the plaintiff can not assert a Title VII claim against him upon which relief can be granted. Defendant Biehler also contends that summary judgment as to the plaintiff's 42 U.S.C. § 1981 claim should be granted in defendant Biehler's favor because there is no evidence that he was personally involved in any of the alleged discriminatory conduct against the plaintiff. In his brief in opposition, the plaintiff agrees that defendant Biehler is not a proper defendant in this case. Accordingly, we will grant summary judgment as to the claims against defendant Biehler. Accordingly, the case will go forward as to defendant PennDOT only.

Defendant PennDOT contends that the plaintiff's 42 U.S.C. § 1981 claims against it are barred by the Eleventh Amendment. In his brief in opposition, the plaintiff agrees that PennDOT is not a proper defendant with respect to the 42 U.S.C. § 1981 claims. Accordingly, we will grant defendant PennDOT summary judgment on the plaintiff's 42 U.S.C. § 1981 claims.

5

That leaves the Title VII claims against defendant PennDOT.

Defendant PennDOT asserts that during discovery the plaintiff identified several alleged incidents of prohibited discrimination which were not presented in the plaintiff's administrative charges.  Defendant PennDot argues that, since these incidents were not within the scope of the plaintiff's administrative charges, the plaintiff has not exhausted his administrative remedies with respect to these incidents and that, therefore, it should be granted summary judgment with respect to these incidents of alleged wrongful discrimination.  Defendant PennDOT also asserts that many alleged acts of wrongful discrimination asserted by the plaintiff in his discovery responses occurred more than 300 days before the plaintiff filed his administrative complaints and are, therefore, barred by the statute of limitations.  In response to these arguments, the plaintiff asserts that he is not seeking Title VII relief for any act that is either beyond the scope of the administrative complaint or investigation or that occurred more than 300 days prior to the date that he filed his administrative complaints. The plaintiff asserts that during discovery the defendants asked him to describe every act of discrimination that he suffered at the hands of PennDOT and its agents and that he answered accordingly.

There does not appear to be a dispute that the plaintiff can not recover for alleged discrete acts of prohibited

6

discrimination that were not within the scope of the administrative complaints or that occurred more that 300 days prior to the date that the plaintiff filed his administrative complaints. The plaintiff, however, asserts that all of the alleged incidents of wrongful discrimination that he suffered are part of his hostile environment claim. In determining whether an actionable hostile work environment claims exists, we look at all of the circumstances and "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 116-117 (2002). Given that the plaintiff's fourth administrative complaint arguably presented a hostile work environment claim, all of the alleged incidents of wrongful discrimination can be seen to be within the scope of the investigation of that complaint. Accordingly, we will consider all of the alleged incidents as part of the plaintiff's hostile work environment claim.

In order to prevail on his hostile work environment claim, the plaintiff must establish (1) that he suffered intentional discrimination because of his race, color or national origin, (2) that the discrimination was severe or pervasive; (3) that the discrimination detrimentally affected him; (4) that the discrimination would have detrimentally affected a reasonable person in like circumstance; and (5) a basis for employer liability. *See Jensen v. Potter,* 435 F.3d 444, 449 (3d Cir. 2006), *overruled in part on other grounds by Burlington Northern & Santa*

*Fe Railway Co. v. White,* 548 U.S. 53 (2006). "The analysis of the hostile work environment claim has a subjective and an objective component: the evidence must establish that the environment would be perceived by a reasonable person as hostile and that [the plaintiff] did, in fact, perceive it to be so." *Martin v. Allegheny Airlines, Inc.,* 126 F.Supp.2d 809, 820 (M.D.Pa. 2000), *aff'd,* 261 F.3d 492 (3d Cir. 2001). For harassment to be actionable it must be sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 67 (1986). The United States Supreme Court has "made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). "When the workplace is permeated with 'discriminatory intimidation, ridicule, and insult," that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' Title VII is violated." *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 23 (1993)(quoting *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57 (1986)). Whether an environment is hostile or abusive can be determined only by looking at all of the circumstances. *Harris, supra,* 510 U.S. at 23. The circumstances "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.*

Defendant PennDOT argues that the plaintiff has not alleged acts which are sufficiently frequent, severe, physically threatening or humiliating or which unreasonably interfered with his work performance to constitute a hostile work environment.

The plaintiff cites the following in support of his claim that he was subjected to a hostile environment because of his race, color or national origin: 1) white civil engineers were hired shortly after the plaintiff but were offered higher salaries than the plaintiff even though the plaintiff had more engineering experience than they did; 2) the plaintiff applied for fourteen promotions since he first began to work for PennDOT and was denied each of those promotions; 3) the plaintiff was denied the opportunity to apply for a position given to Mark Hull in March of 2006; 4) at the beginning of the plaintiff's career with PennDOT Thomas Prestash, at the time a coworker of the plaintiff, falsely accused the plaintiff of misconduct on two occasions; 4) Mr. Prestash made monkey-like sounds toward the plaintiff; 5) Mr. Prestash made repeated comments about the plaintiff's wife; 6) Mr. Prestash invited the plaintiff boating one July 4th on the condition that the plaintiff promise not to wear a speedo in front of his [Prestash's] wife; when the plaintiff asked about the condition of not wearing a speedo, another individual responded to the plaintiff that it was because you are a "stud muffin"; then both Prestash and the other individual burst into laughter; 7) in June of 2004, the plaintiff was instructed not to charge legitimate mileage from his residence to a construction site because his residence was outside the boundary of the district; 8)

9

after white construction inspectors refused to accept the work because they could not charge a travel allowance, the plaintiff was assigned to take charge of a paving project; 9) the plaintiff was falsely accused of studying on the job; 10) the plaintiff was not rated as highly as he thought he should have been on his performance evaluations for 2004 and 2005; 11) in May and August of 2005, the plaintiff was denied tuition reimbursement and educational leave to permit him to attend three engineering courses; 12) from February of 2005 until April of 2006, without receiving additional pay, the plaintiff was assigned to perform both the duties of the Assistant Structural Control Engineer and that of the Structural Control Engineer because the white engineer in the Structural Control Engineer position had no structural engineering experience and could not perform the job; and 13) on March 14, 2006, the day after the transfer of Mark Hull to the position of Structural Control Engineer was announced, Thomas Prestash, who by then was the District Executive for Engineering at PennDot, asked the plaintiff "How is Uche feeling today?" and then again later in the day asked the plaintiff "How is Uche really feeling today?" and Prestash again made monkey like sounds directed at the plaintiff.  The plaintiff perceived these questions and the sounds to be an effort by Prestash to taunt the plaintiff because of another denial of a promotional opportunity for the plaintiff.

We disagree with the defendant that the denial of promotions and other discrete alleged discriminatory incidents can not be considered in connection with the plaintiff's hostile

environment claim.  *See Royal v. Potter*, 416 F.Supp.2d 442, 453 (S.D.W.Va. 2006)(holding that discrete acts may be considered in connection with a hostile work environment claim).  A plaintiff may not bootstrap a series of discrete acts without more into a hostile environment claim.  But in view of all of the incidents and the incidents that could reasonably be construed as racially derogatory conduct by at least one superior official, an inference might be established that a number of the incidents, including the discrete alleged discriminatory actions, were connected and were racially motivated.[1]

The plaintiff cites a large number of incidents.  For many of the incidents the plaintiff has not presented evidence that the incidents were racially motivated.  However, the plaintiff does present evidence of repeated incidents of conduct on the part of Mr. Prestash which, construed in favor of the plaintiff, reasonably support an inference of a hostile working environment for the plaintiff.

It is not possible on the summary judgment record to reliably characterize the relationship between the plaintiff and one coworker, Prestash, who later had been promoted to a higher

---

[1] We note that the defendants did not move for summary judgment on the failure to promote claims that were exhausted and within the statute of limitations or on the plaintiff's claims regarding tuition reimbursement, educational leave and lack of increased pay for performing the duties of the Structural Control Engineer.  Thus, there was no duty on the part of the plaintiff to present evidence regarding those claims as discrete claims.

11

position while the plaintiff had not been promoted.  It was not an entirely one-dimensional relationship.  Some of the cited interactions deemed objectionable by the plaintiff occurred in the context of a social outing invitation from Prestash to the plaintiff.  The fact that the plaintiff subjectively felt from his interactions with Prestash that Prestash's conduct was intended to taunt him does not of itself support a reasonable inference that this was the intent or that it was a reasonable perception.  But assuming for the sake of analysis taunting "monkey sounds" on one early occasion, some greater control over the working environment on the part of Prestash than on the part of the plaintiff, a role on the part of Prestash in the plaintiff's career advancements or lack thereof, and a return to "monkey sounds" in combination with taunting words at a negative career development for the plaintiff, a reasonable inference of a hostile working environment can not be summarily rejected.

It is improper to isolate incidents of facially neutral harassment and conclude, one by one, that each lacks the required discriminatory animus. *Jensen v. Potter,* 435 F.3d 444, 450 (3d Cir. 2006), *overruled in part on other grounds by Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53 (2006).  Rather, because it is often difficult to determine the motivations of an action, the discrimination analysis must concentrate on the overall scenario. *Id.*  Mindful of that analysis and after analyzing the plaintiff's evidence as a whole, we conclude that the plaintiff has presented evidence from which a reasonable finder of fact could conclude that the plaintiff's workplace was

permeated with discriminatory intimidation, ridicule and insult sufficient to support a hostile work environment claim. Accordingly, we will not grant defendant PennDOT summary judgment on the plaintiff's hostile work environment claim.

"Constructive discharge occurs when an 'employer knowingly permits condition[s] of discrimination in employment so intolerable that a reasonable person subject to them would resign.'" *Spencer v. Wal-Mart Stores, Inc.,* 469 F.3d 311, 316 n.4 (3d Cir. 2006)(quoting *Goss v. Exxon Office Sys. Co.,* 747 F.2d 885, 887 (3d Cir. 1984)).  To establish a constructive discharge, a plaintiff must demonstrate a greater severity or pervasiveness of harassment than that required to establish a hostile work environment. *Id.*

Given our conclusion that defendant PennDOT is not entitled to summary judgment on the plaintiff's hostile work environment claim, we conclude that defendant PennDOT is not entitled to summary judgment on the plaintiff's constructive discharge claim.

IV. Order.

**IT IS ORDERED** that the defendants' motion (doc. 29) for partial summary judgment is **GRANTED** to the extent that defendant Biehler is granted summary judgment on all claims and that defendant PennDOT is granted summary judgment on the 42 U.S.C.

§ 1981 claims.  The motion for partial summary judgment is otherwise **DENIED**.  The Clerk of Court shall defer entry of judgment until conclusion of the entire case.

*/s/ J. Andrew Smyser*
J. Andrew Smyser
Magistrate Judge

Dated:  January 14, 2009.